# United States Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**John Ley**
Clerk of the Court

For rules and forms visit
www.ca11.uscourts.gov

September 08, 2010

Steven M. Larimore
Clerk, U.S. District Court
400 N MIAMI AVE RM 8N09
MIAMI FL 33128-1813



**Appeal Number: 07-13039-GG**
Case Style: Miccosukee Tribe of Indians v. Kraus-Anderson
District Court Number: 04-22774 CV-UU

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
    Original Exhibits, consisting of: two folders
    Original record on appeal or review, consisting of: ten volumes

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, <u>but not a copy of the court's decision</u>, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

John Ley, Clerk of Court

Reply To: James O. Delaney (404) 335-6113

Encl.

MDT-1 (06/2006)

# United States Court of Appeals
For the Eleventh Circuit

No. 07-13039

District Court Docket No.
04-22774-CV-UU

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 28, 2010
JOHN LEY
CLERK

MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA,

        Plaintiff-Counter
        Defendant-Appellant,

versus

KRAUS-ANDERSON CONSTRUCTION
COMPANY,

        Defendant-Counter
        Claimant-Appellee.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit
By: [signature]
Deputy Clerk
Atlanta, Georgia

-----------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Florida
-----------------------------------------------------------------

JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
SEP 0 8 2010
U.S. COURT OF APPEALS
ATLANTA GA

Entered: May 28, 2010
For the Court: John Ley, Clerk
By: Gilman, Nancy

CORRECTED

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 07-13039

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 28, 2010
JOHN LEY
CLERK

D. C. Docket No. 04-22774-CV-UU

MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA,

Plaintiff-Counter
Defendant-Appellant,

versus

KRAUS-ANDERSON CONSTRUCTION
COMPANY,

Defendant-Counter
Claimant-Appellee.

Appeal from the United States District Court
for the Southern District of Florida

(May 28, 2010)

Before TJOFLAT and CARNES, Circuit Judges, and BOWEN,[*] District Judge.

---

[*] Honorable Dudley H. Bowen, Jr., United States District Judge for the Southern District of Georgia, sitting by designation.

TJOFLAT, Circuit Judge:

In 2004, Kraus-Anderson Construction Company ("Kraus-Anderson") sued the Miccosukee Tribe of Indians of Florida (the "Tribe") for breach of contract in the Miccosukee Tribal Court. The Tribe denied liability and counterclaimed, alleging that Kraus-Anderson was the breaching party. Following a trial on the merits, the Tribal Court denied Kraus-Anderson's claims and, finding for the Tribe on its counterclaim, awarded the Tribe a judgment of $1.65 million. Kraus-Anderson petitioned the Tribe's Business Council for leave to appeal the judgment to the Tribe's General Council, which acts as the Tribal Court of Appeals.[1] The Council denied Kraus-Anderson's petition.

Kraus-Anderson refused to satisfy the Tribal Court's judgment, so the Tribe brought suit against Kraus-Anderson in the United States District Court for the Southern District of Florida to enforce it. As an affirmative defense, Kraus-Anderson alleged that, in denying its petition for leave to appeal the Tribal Court's judgment, the Business Council denied it due process of law, thereby rendering the judgment void. On cross-motions for summary judgment, the district court,

---

[1] We refer to the Tribe's General Council as the Tribal Court of Appeals. Under the Miccosukee Criminal and Civil Code, the Business Council has discretion to determine whether to allow the Tribal Court of Appeals to hear an appeal of a Tribal Court judgment.

relying on principles of comity, held the judgment unenforceable and granted Kraus-Anderson summary judgment. The Tribe now appeals. We reverse and remand the case to the district court with the instruction that it dismiss the case for lack of subject matter jurisdiction.

I.

A.

The Tribe, a federally recognized Indian tribe, has approximately 550 members and maintains its reservation in Miami-Dade County, Florida. Kraus-Anderson is a large Minnesota-based construction company that specializes in building casino properties for Indian tribes.[2]

Kraus-Anderson and the Tribe negotiated and signed three contracts from 1997 to 1998 for the construction of several buildings on the Tribe's reservation, including a resort hotel and halfway house.[3] The parties agreed to base the three contracts on the American Institute of Architects Standard Form of Agreement

---

[2] From 1993 to 2003, Kraus-Anderson completed more than $400 million in construction projects for Indian tribes.

[3] The contracts were signed on the following dates: August 26, 1997, for the construction of a resort hotel and convention center; September 13, 1997, for the construction of a halfway house, clinic, and judicial building; and September 18, 1998, for the construction of a school.

Between Owner and Design/Builder (the "AIA Form").[4] Some of the AIA Form provisions were amended by interlineation; one provision, "Article 10 Arbitration," was eliminated altogether.[5] Although Kraus-Anderson preferred that claims be resolved pursuant to the arbitration procedures of that article, the Tribe asserted that it would waive its sovereign immunity only if Kraus-Anderson agreed to use the Tribal Court as the forum for resolving contract disputes. Kraus-Anderson relented and, in lieu of Article 10, the parties inserted the following section in Article 14:

> 14.4.1.2 Waiver of Sovereign Immunity. The [Tribe] hereby waives any defense of sovereign immunity from suit in Miccosukee Tribal Court in connection with any action or proceeding, including any claim, cross-claim or counterclaim, brought by or against it in connection with this [contract] or any of the transactions contemplated in this [contract] . . . for and only with respect to actions brought in Miccosukee Tribal Court. [The Tribe] does not waive immunity in any form for actions in any court (including Miccosukee Tribal Court) not in connection with this [contract] or any of the transactions contemplated in this [contract].

The AIA Form's choice of law provision, "Article 11 Miscellaneous Provisions,"

---

[4] The parties used the 1985 edition of the AIA Form, specifically the "Part 2 Agreement—Final Design and Construction."

[5] Article 10 contained five sections. Section 10.1 stated that:

Claims, disputes and other matters in question between the parties to this Part 2 arising out of or relating to Part 2 shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect unless the parties agree otherwise.

4

states, in section 11.1, that "[t]his Part 2 shall be governed by the law of the place where the Work is located." The parties amended section 11.1 so that it provided that Part 2 would be governed by "substantive contract laws of the State of Florida and other substantive laws of the Miccosukee Tribe."

In mid-1999, the parties began to disagree as to the amounts due under the contracts. The Tribe refused to honor certain invoices submitted by Kraus-Anderson, contending that the company had overcharged for the work it had performed and had failed to remedy several construction defects. Settlement negotiations ensued, but the parties were unable to resolve their differences, and the invoices remained unpaid.

B.

On May 24, 2001, Kraus-Anderson filed a complaint against the Tribe in the Tribal Court alleging that $7,077,604.70 was due under the contracts. The Tribe responded with a counterclaim and set-off, neither of which specified a monetary amount, based on Kraus-Anderson's allegedly improper overcharges and construction defects. On June 18, 2004, following discovery and a sixteen-day bench trial, the Tribal Court issued its "Trial Decision," a 166-page document that summarized the evidence and set forth the court's findings and conclusions. In it,

the Tribal Court denied Kraus-Anderson's claims and awarded the Tribe judgment in the sum of $1,654,998.88 on its counterclaim.

Kraus-Anderson filed a notice of appeal to the Miccosukee Business Council on July 1, 2004, asserting the following claims of error: the Tribal Court (1) exceeded its powers; (2) rendered a decision based on mathematical errors; (3) excluded material evidence and prejudiced Kraus-Anderson's ability to present its case; and (4) was generally prejudiced against Kraus-Anderson. The Business Council considered these asserted errors and reached a "consensus" that the Tribal Court committed no procedural error in reaching its decision. On July 15, 2004, the Business Council notified Kraus-Anderson that it had "disallowed" its appeal because the company "raise[d] no issues meriting review" by the Tribal Court of Appeals.

## C.

Kraus-Anderson did not pay any portion of the judgment entered against it. On November 2, 2004, the Tribe commenced this action to enforce the Tribal Court's judgment. The Tribe's complaint alleged that the district court had federal question jurisdiction under 28 U.S.C. § 1331, diversity jurisdiction under 28 U.S.C. § 1332, and "federal common law of comity jurisdiction" under 28 U.S.C. § 1738. After reciting the contractual events that led to the Tribal Court judgment,

the complaint requested the court to "find that the Trial Decision (final judgment) is entitled to recognition, registration, and enforcement in accordance with the applicable federal law and [to] enter [an] order recognizing, registering and enforcing the Tribal Court's Trial Decision (final judgment)."

In its answer, Kraus-Anderson asserted, as an affirmative defense, that the Tribal Court judgment was unenforceable because the Business Council's refusal to allow the appeal denied Kraus-Anderson due process of law. Addressing the complaint's assertion of subject matter jurisdiction, Kraus-Anderson disagreed that the district court had jurisdiction under §§ 1332 and 1738 but admitted that the court had jurisdiction under § 1331 because its answer contained a defense based on the Due Process Clause.

The parties having joined issue, Kraus-Anderson moved the court for summary judgment based on its affirmative defense. The court granted its motion in an order entered on May 23, 2007. After stating that the complaint failed to disclose a basis for jurisdiction under §§ 1332 or 1738, the court concluded that "subject matter jurisdiction over this action, which seeks the enforcement of a tribal court judgment against a non-Indian party, is based on federal common law," and therefore presented a federal question embraced by § 1331. The court then turned to the question of whether full faith and credit or comity was the

appropriate framework for analyzing the enforceability of the Tribal Court's judgment. The court opted for the latter approach and held that the judgment should not be afforded comity because the Business Council was an interested party in the litigation and its disallowance of Kraus-Anderson's appeal constituted a denial of due process. After the court entered a final judgment for Kraus-Anderson in accordance with its May 23 order, the Tribe took this appeal.

II.

We begin, as in all appeals, by asking whether the district court had subject matter jurisdiction. See Great S. Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 453, 20 S. Ct. 690, 692, 44 L. Ed. 842 (1900) ("On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes.").[6] In the complaint, the Tribe asserted three bases for jurisdiction: 28 U.S.C. §§ 1331, 1332, and 1738. The district court concluded that jurisdiction lay under § 1331. We therefore consider that jurisdictional basis first, then address §§ 1332 and 1738.

A.

---

[6] We have jurisdiction under 28 U.S.C. § 1291, which provides that "courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States."

Although the parties agree with the district court that jurisdiction lies under § 1331,[7] we nonetheless have the obligation to inquire <u>sua sponte</u> into whether the district court was correct. See <u>Bender v. Williamsport Area Sch. Dist.</u>, 475 U.S. 534, 541, 106 S. Ct. 1326, 1331, 89 L. Ed. 2d 501 (1986) ("[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it.") (quoting <u>Mitchell v. Maurer</u>, 293 U.S. 237, 244, 55 S. Ct. 162, 165, 79 L. Ed. 338 (1934)); <u>Fitzgerald v. Seaboard Sys. R.R., Inc.</u>, 760 F.2d 1249, 1251 (11th Cir. 1985).

Pursuant to § 1331, district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.[8] "[F]ederal question jurisdiction does not exist merely because an

---

[7] A finding of jurisdiction under § 1331 is a conclusion of law.

[8] Under the "well-pleaded complaint rule,"

"[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States."

Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6, 123 S. Ct. 2058, 2062, 156 L. Ed. 2d 1 (2003) (quoting Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152, 29 S. Ct. 42, 43, 53 L. Ed. 126 (1908)) (alteration in original). Thus, in determining the presence of federal question jurisdiction, we may not, as Kraus-Anderson implied in framing its answer to the Tribe's complaint, consider its affirmative defense based on the Due Process Clause.

Indian tribe is a party or the case involves a contract with an Indian tribe,"[9] Stock West, Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989); a plaintiff's complaint still must "claim a right to recover under the Constitution and laws of the United States," Bell v. Hood, 327 U.S. 678, 681, 66 S. Ct. 773, 775, 90 L. Ed. 939 (1946). Although this is not a stringent standard, a mere incantation that the cause of action involves a federal question is not always sufficient. Murphy v. Inexco Oil Co., 611 F.2d 570, 573 (5th Cir. 1980);[10] see generally 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1209 (3d ed. 2004). Bearing in mind this standard, we examine whether the Tribe has sufficiently identified a Constitutional provision or federal law under which it can recover.

1.

Despite the complaint's lack of reference to any discernible federal law, the district court invoked its § 1331 jurisdiction on the theory that a case that "seeks the enforcement of a tribal court judgment against a non-Indian party[ ] is based on federal common law." On appeal, in supplemental briefing that we requested

---

[9] As noted in part I.A., supra, the contract here specified it would be governed by Florida and Tribal law.

[10] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

following oral argument, the Tribe and Kraus-Anderson similarly rely upon federal common law to support federal question jurisdiction. The Tribe argues that the district court had jurisdiction based on the "quintessentially federal character of Native American law" and that its "claim for enforcement of a tribal judgment on non-tribal land relied exclusively on 'the Federal Government's longstanding policy of encouraging tribal self-government.'" Kraus-Anderson agrees that "the existence of abundant federal common law pertaining to Indian Tribes is sufficient to invoke federal question jurisdiction." We therefore begin by examining the possibility that federal common law created jurisdiction pursuant to § 1331. We conclude that it did not.

"'[C]laims founded upon federal common law as well as those of a statutory origin'" may give rise to federal question jurisdiction. Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 850, 105 S. Ct. 2447, 2450–52, 85 L. Ed. 2d 818 (1985) (quoting Illinois v. City of Milwaukee, 406 U.S. 91, 100, 92 S. Ct. 1385, 1391, 31 L. Ed. 2d 712 (1972)). The Supreme Court has made clear, however, that vague assertions by Indian-tribe plaintiffs regarding federal common law to support federal question jurisdiction will not suffice. In Inyo County v. Paiute-Shoshone Indians, 538 U.S. 701, 123 S. Ct. 1887, 155 L. Ed. 2d 933 (2003), the Court explained that merely relying on the "federal common law of

11

Indian affairs" does not clarify "what federal law, if any, the Tribe's case 'aris[es] under.'" Id. at 712, 123 S. Ct. at 1894 (quoting 28 U.S.C. § 1331)(alteration in original).[11] See also Weeks Constr., Inc. v. Oglala Sioux Hous. Auth., 797 F.2d 668, 672 (8th Cir. 1986) ("[T]he fact that the Housing Authority is created by and operates on behalf of an Indian tribe is not alone sufficient to find the existence of a federal question."). Likewise, here, the Tribe has failed to explain the specific prescription of federal common law that enables it to maintain an action to enforce a judgment handed down by a tribal court in a proceeding to which the defendant consented by contract.[12]

2.

Although the Tribe has failed to identify any federal law or constitutional provision that its suit arises under, we proceed to consider another way that federal question jurisdiction may be conferred. Whether a tribal court has adjudicative

---

[11] In Inyo County, the Court remanded the case for "focused consideration" as to "what prescription of federal common law enables a tribe to maintain an action for declaratory and injunctive relief establishing its sovereign right to be free from state criminal processes." 538 U.S. at 712, 123 S. Ct. at 1894. Here, remand would be futile, because we explore all of the possibilities based on the complaint's allegations.

[12] The district court concluded that it had jurisdiction under § 1331 based on National Farmers and a "persuasive" Ninth Circuit case, Wilson v. Marchington, 127 F.3d 805 (9th Cir. 1997). Wilson discussed the "quintessentially federal character of Native American law." Id. at 813. Under our view of National Farmers, other Supreme Court precedent, and circuit precedent, the allegations in the complaint and the nature of Indian law are insufficient to confer federal jurisdiction for the reasons articulated in this opinion.

12

authority over nonmembers presents a federal question based on federal common law. Plains Commerce Bank v. Long Family Land & Cattle Co., __ U.S. __, 128 S. Ct. 2709, 2716–17, 171 L. Ed. 2d 457 (2008); Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 15, 107 S. Ct. 971, 976, 94 L. Ed. 2d 10 (1987); Nat'l Farmers, 471 U.S. at 852–53, 105 S. Ct. at 2452. In this section, we explain why this case is not a challenge regarding the reach of Indian power and that subject matter jurisdiction does not exist on that basis.

In National Farmers, the Supreme Court commented that it "has frequently been required to decide questions concerning the extent to which Indian tribes have retained the power to regulate the affairs of non-Indians." 471 U.S. at 851, 105 S. Ct. at 2451. There, a tribal court entered a default judgment against a state school district, and the school district sought and received an injunction from a federal district court preventing further proceedings in the tribal court. Id. at 847, 105 S. Ct. at 2449. The Supreme Court held that in order to invoke federal question jurisdiction, the school district had to contend that the tribe had been divested of its sovereign authority to enter a judgment—in essence, that a dispute existed over the extent of tribal powers. Id. at 852, 105 S. Ct. at 2452. Because the school district contended that federal law "divested the tribe of this aspect of sovereignty," it satisfied this federal question requirement. Id. at 852–853, 105 S.

Ct. at 2452. In particular, "[t]he question whether an Indian tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court" had to "be answered by reference to federal law and is a 'federal question' under § 1331."[13] Id. at 852, 105 S. Ct. at 2452. "[A] federal court may determine under § 1331 whether a tribal court has exceeded the lawful limits of its jurisdiction." Id. at 853, 105 S. Ct. at 2452.

In sum, National Farmers dictates that a dispute over tribal court jurisdiction is considered a dispute over tribal sovereignty, and therefore—like a dispute over tribal sovereignty—is a matter of federal law to which § 1331 applies. This case, however, does not involve a dispute over the Tribal Court's jurisdiction. That is, the Tribe has not asked for a declaratory decree to resolve a dispute over whether the Tribal Court had jurisdiction to entertain Kraus-Anderson's claim for payment and the Tribe's set off and counterclaim. Both sides agree that the Tribal Court possessed such jurisdiction.[14] What the Tribe asks is that the federal district court

---

[13] Tribal sovereign immunity was not at issue because the school district was undisputedly non-Indian and a subdivision of the state of Montana. Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 560 F. Supp. 213, 215 (D. Mont. 1983).

[14] A district court cannot entertain a suit for a declaratory judgment unless there is a "definite and concrete" controversy, Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S. Ct. 461, 464, 81 L. Ed. 617 (1937), and, stated above, there is no controversy over the Tribal Court's jurisdiction in this case. Further, under Montana v. United States, 450 U.S. 544, 564–65, 101 S. Ct. 1245, 1258, 67 L. Ed. 2d 493 (1981), no controversy could exist; Montana plainly states that a nonmember, such as Kraus-Anderson, can consent to tribal court jurisdiction by contract.

14

domesticate its judgment against Kraus-Anderson so that it can obtain execution of the judgment pursuant to Federal Rule of Civil Procedure 69. A suit to domesticate a tribal judgment does not state a claim under federal law, whether statutory or common law. Thus, the district court lacked § 1331 jurisdiction under National Farmers to entertain the Tribe's complaint.

### 3.

Finally, we note that although Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to include a "short and plain statement of the grounds for the court's jurisdiction," courts have saved some complaints even though they lacked a jurisdictional statement because they made references to federal law sufficient to permit the court to find § 1331 jurisdiction. Cf. Gardner v. First Am. Title Ins. Co., 294 F.3d 991, 994 (8th Cir. 2002) ("Rule 8(a)(1) is satisfied if the complaint say[s] enough about jurisdiction to create some reasonable likelihood that the court is not about to hear a case that it is not supposed to have the power to hear.") (alteration in original) (internal quotation omitted). Here, the complaint is devoid of a single citation to a Constitutional provision, a federal statute, or a recognized theory of common law as the basis for the allegation that the Tribe's cause of action arises under federal law. The barren complaint provided by the Tribe gives us no indication of how the Tribe expected

15

the district court to recognize, register, and enforce the Tribal judgment. See Pan Am. Petroleum Corp. v. Superior Court, 366 U.S. 656, 663, 81 S. Ct. 1303, 1307, 6 L. Ed. 2d 584 (1961) (finding it "immaterial . . . that the plaintiff could have elected to proceed on a federal ground. . . . If the plaintiff decides not to invoke a federal right, his claim belongs in a state court.") (internal citation omitted). Therefore, we find no other ascertainable basis for jurisdiction under § 1331.

B.

Having concluded that § 1331 does not provide a basis for federal jurisdiction in this case, we now turn to the other bases for federal jurisdiction asserted in the complaint, §§ 1332 and 1738. We can quickly reject both possibilities.

First, as the district court found regarding the possibility of diversity jurisdiction, "[t]he majority view—followed by every court of appeals that has addressed the issue—is that unincorporated Indian tribes cannot sue or be sued in diversity under 28 U.S.C. § 1332(a)(1) because they are not citizens of any state" (citing cases). Turning to § 1738, the Tribe asserted in its complaint that this statute—the full faith and credit statute—provided an independent basis for

16

subject matter jurisdiction.[15] We are accordingly faced with the question of whether, under the circumstances presented here, a cause of action seeking the enforcement of a tribal court judgment creates an independent basis of subject matter jurisdiction. The clear answer is no.

Under circuit precedent, it is long established that § 1738 does not, standing alone, confer jurisdiction on a federal district court to domesticate a judgment rendered by a court of another jurisdiction. Hazen Research, Inc. v. Omega Minerals, Inc., 497 F.2d 151, 153 n.1 (5th Cir. 1974). Similarly, an appeal to comity does not, standing alone, create federal question jurisdiction under 28 U.S.C. § 1331. 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4473 (2d ed. 2002 & Supp. 2009). As the Sixth Circuit has noted, an argument that comity brings about federal question jurisdiction "puts the proverbial cart before the horse. . . . [W]hen an action already rests on federal question jurisdiction, the theory of comity can serve as a discretionary basis for a court to determine whether a foreign country court's

---

[15] 28 U.S.C. § 1738 provides, in relevant part, that the authenticated

records and judicial proceedings of any court of any such State, Territory or Possession . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

17

judgment should be given preclusive effect." Taveras v. Taveraz, 477 F.3d 767, 783 (6th Cir. 2007). Furthermore, the Tribe no longer asserts § 1738 as a basis for federal jurisdiction; in its supplemental briefing, the tribe states, "As we pointed out at oral argument, . . . the Tribe did not rely upon § 1738 . . . ." Therefore, we conclude that none of the provisions cited in the Tribe's complaint—§§ 1331, 1332, and 1738—confer subject matter jurisdiction to the district court and thus the Tribe cannot enforce its monetary judgment in federal court.[16]

### III.

A federal court must have subject matter jurisdiction to grant a party the relief it seeks. Contrary to the district court's holding, the parties here have not presented any basis for subject matter jurisdiction. Accordingly, the judgment of the district court is REVERSED, and the case is REMANDED with direction to the district court to dismiss for lack of subject matter jurisdiction.

SO ORDERED.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit
By: _____
Deputy Clerk
Atlanta, Georgia

---

[16] Although we hold that the Tribe cannot sue in federal court to enforce the Tribal Court judgment it obtained against Kraus-Anderson, the Tribe is not without a remedy—there are other possible ways for the Tribe to enforce the judgment. The Tribe can use tribal law procedures to obtain execution of the judgment, seizing Kraus-Anderson's assets, if any, in the reservation. The Tribe can also seek enforcement of the judgment in state court and will prevail if the state court elects to grant comity to the Tribal Court's judgment.